UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| LOLA PARSONS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6: 06-53-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FIRST NATIONAL BANK & TRUST, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendant First National Bank & Trust's motion to dismiss. [Record No. 12] Because the Court finds that the Plaintiffs have failed to allege a factual basis to support the claims brought pursuant to the anti-tying provisions of the Bank Holding Company Act, the Court will dismiss, with prejudice, these claims based on the Plaintiffs' failure to state a claim upon which relief can be granted. In addition, the Court will dismiss, without prejudice, the Plaintiffs' state law claim for breach of fiduciary duty inasmuch as the Court finds that this claim would be best resolved by the state court.

## I.     BACKGROUND

This action arises out of a relationship that First National Bank & Trust ("FNB") had with the Lola Parsons and her late husband, James Parsons, and the Parsons' Businesses, James Parsons Construction Co., Inc., J&L Drilling, Inc., and J&L Mining and Stripping, Inc. (collectively, the "Plaintiffs"). For purposes of the present motion, the Court assumes that all allegations contained in the Plaintiffs' pleadings are true.

-1-

According to the Amended Complaint, in 2003 and 2004, FNB extended credit to, and received promissory notes from, the Parsons and their businesses totaling more than $3.6 million. In 2003, Mr. Parsons and the Parsons' Businesses negotiated with an entity called Parsons 4E, LLC ("Parsons 4E") to sell all of the Parsons' Businesses' coal industry assets to Parsons 4E. Following the sale of assets to Parsons 4E, Mr. Parsons and the Parsons Businesses relied upon the revenue of, and installment payments from, Parsons 4E to make payments on the Plaintiffs' loans with FNB.

In March 2003, FNB loaned $480,020 to 2Energy, Inc. ("2Engergy"), which was a member of Parsons 4E. With 2Energy's consent, FNB retained $110,000 of the proceeds of the loan to 2Energy and applied the $110,000 to pay, in part, one or more of the Plaintiffs' loans. The Plaintiffs allege that this was done without their knowledge or consent.

In January 2005, when Mr. Parsons was hospitalized for cancer treatments, the Plaintiffs allege that an agent from FNB induced him to assign the proceeds of a $1 million life insurance policy to FNB. The Plaintiffs further aver that, after Mr. Parsons death, FNB applied the proceeds of the policy to one or more of the Plaintiffs' loans in order to hasten the default of one or more of these loans.

In March 2005, FNB asked Mrs. Parsons to "sign over" certificates of deposit so that FNB could apply the proceeds to the Plaintiffs' loans. However, Mrs. Parsons refused. FNB then demanded that Mrs. Parsons sue Parsons 4E for the sum of the Plaintiffs' loans and threatened to foreclose on real property owned or controlled by Mrs. Parsons if she refused.

Based these alleged activities, the Plaintiffs filed a Complaint against FNB on February 3, 2006, asserting claims under the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972. In addition, a state law claim for breach of fiduciary duty also was asserted. On April 17, 2006, FNB filed a motion to dismiss.[1] Subsequently, on May 5, 2006, the Plaintiffs filed a response to the motion and simultaneously filed an Amended Complaint. FNB then filed a second motion to dismiss based on the allegations contained in the Plaintiffs' Amended Complaint. Through this motion, FNB has moved to dismiss the claims under Section 1972 for failure to state a claim. In addition, FNB argues that the state law claim for breach of fiduciary duty should be dismissed without prejudice to being re-filed in state court.

## II.    LEGAL STANDARD

FNB's motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows a defendant to move for dismissal of a complaint if it fails to state a claim upon which relief can be granted. When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). Further, courts must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard*, 76 F.3d at 724 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)). And while a complaint need not specify every detail of a plaintiff's claim, it must give the

---

[1]    On May 26, 2006, the Court entered an order denying as moot FNB's first motion to dismiss which was based on the allegations contained in the original Complaint.

defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette*, 41 F.3d at 1064. Although liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## III.   DISCUSSION

### A.   12 U.S.C. § 1972 Claims

The Plaintiffs allege in their Amended Complaint that FNB violated the provisions of Title 12 of the United States Code, Section 1972 (1), "by varying the consideration of the Parsons Loans, including, without limitation, hastening default under some, paying a portion of others, and unilaterally deciding to allow others to continue to accrue interest, on the condition or requirement": (a) "that Mr. Parsons make an unconditional death bed assignment of the proceeds of Mr. Parsons' life insurance policy, which allowed FNB to pay itself from the proceeds without regard to the terms of the Parson Loans and/or the best interests of the Parsons and the Parsons Businesses"; (b) "that after Mr. Parsons' death, Mrs. Parsons or the Parsons Businesses not participate in any decision on the allocation of the proceeds"; and (2) "by threatening to commence foreclosure on real property owned or controlled by Mrs. Parson, on the condition or requirement that Mrs. Parson agree to bring suit against Parsons 4E for the Parsons Loans."

-4-

[Record No. 7, ¶ 51]

Section 1972 of the Bank Holding Company Act provides that:

(1)    A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement–

(C)    that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

12 U.S.C. § 1972(1)(C). "The purpose of this provision is to prohibit anti-competitive practices that require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank produce or service they desire." *Highland Capital, Inc. v. Franklin National Bank,* 350 F.3d 558, 565 (6th Cir. 2003). However, Section 1972 was not intended to interfere with the conduct of appropriate traditional banking practices. *Id.* (citing *McCoy v. Franklin Sav. Ass'n,* 636 F.2d 172, 175 (7th Cir. 1980). For example, the Sixth Circuit has held that Section 1972 does not prohibit banks from protecting their investments. *Id.* (citing *Parsons Steel, Inc. v. First Alabama Bank of Montgomery, N.A.*, 679 F.2d 242, 245 (11th Cir. 1982).

Thus, to state a claim under Section 1972, the Plaintiff must allege that: (1) the bank imposed an anti-competitive tying arrangement; (2) the arrangement was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the bank. *Kenty v. Bank One, N.A.*, 92 F.3d 384, 394 (6th Cir. 1996). The Plaintiffs contend that they have properly alleged all three elements required for a claim under the anti-tying provisions of the Bank Holding Company Act. Specifically, the Plaintiffs argue that the Amended Complaint "clearly articulates

the actions of [FNB] upon which Plaintiffs' (sic) base its (sic) demand for relief, which thereby gives [FNB] fair notice of what the [Plaintiffs] claim is and the grounds upon which it rests." [Record No. 15, p. 2]

FNB concedes that the Plaintiffs have provided it with sufficient notice that they are alleging violations under the anti-tying provisions of the Bank Holding Company Act. However, it contends that the Plaintiffs have not plead any set of facts that constitute a violation of 12 U.S.C. § 1972. FNB asserts that merely "giving notice" and simply "parroting the language of the Bank Act" is not sufficient to state claim for relief. [Record No. 16, p. 4]

According to FNB, even if the Plaintiffs' allegations are true that FNB: (1) obtained a death bed assignment of life insurance proceeds from Mr. Parsons; (2) prevented Mrs. Parsons and the Parsons' Businesses from participating in the allocation of life insurance proceeds to the Parsons' loans; and (3) requested that Mrs. Parsons agree to sue Parsons 4E for the Parsons' loans, these acts do not constitute anti-competitive activities by FNB falling within the scope of the Bank Holding Company Act. Rather, FNB argues that it was simply trying to obtain additional collateral for its loans and/or trying to protect its ability to collect on its loans with the Plaintiffs.

FNB has cited a litany of cases in which courts have consistently held that banks are entitled to engage in activities to protect their investments so long as such acts are not conditioned upon, or tied to, some anti-competitive tying arrangement.[2] Thus, this Court must

---

[2]     *See Alpine Elec. Co. v. Union Bank*, 979 F.2d 133, 136 (8th Cir. 1992) (use of money from one company's checking account to reduce debt owed by related entity and conditioning renewal of company's loan on agreement to assume loan of related entity did not violate the Bank Act); *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991) (requirement that shareholders and related company guarantee debt

-6-

determine whether the Plaintiffs have alleged facts from which the existence of a tying arrangement could be inferred.

In *Highland Capital*, the Sixth Circuit concluded that "a statutory violation [of Section 1972] is established by proof that a bank conveyed an intention to withhold credit unless the borrower fulfilled a 'prerequisite' of purchasing or furnishing some other product or service." *Highland Capital*, 350 F.3d at 567. In the present case, the Plaintiffs have failed to allege facts indicating that FNB tied a loan to any other product, service, or benefit. Although the Plaintiffs' allegations clearly evidence that FNB was attempting to obtain additional protection for its existing loans, the facts, as alleged by the Plaintiffs, lack an anti-competitive tie. As noted by the Fifth Circuit's decision in *Parsons Steel*, "[u]nless the 'unusual' banking practice is shown to be an anti-competitive tying arrangement which benefits the bank, it does not fall within the scope of the Act's prohibitions." *Parsons Steel*, 679 F.2d at 245.

Relying on the Fifth Circuit's decision in *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54 (5th Cir. 1978), the Plaintiffs argue that by simply demanding that they perform "an act not related nor usually provided in connection with a loan," FNB violated the anti-tying provisions of the Bank Act. In *Swerdloff*, the bank allegedly required the owners of an indebted corporation

_____

when renegotiating loan did not violate the Bank Act); *Palermo v. First Nat'l Bank and Trust Co. of Oklahoma City*, 894 F.2d 363, 370 (10th Cir. 1990) (bank's condition of renewal of loan on guarantee of related party's debt did not violate the Bank Act); *Davis v. First Nat'l Bank of Westville*, 868 F.2d 206, 207 (7th Cir. 1989) (conditioning additional credit on borrower's liquidation of business did not violate the Bank Act); *Exch. Nat'l Bank of Chicago v. Daniels*, 768 F.2d 140, 143 (7th Cir. 1985) (the Bank Act does not prevent banks from making one in-house loan contingent on another); *Parsons Steel*, 679 F.2d at 246 (condition of additional credit on change in management and stock ownership did not violate the Bank Act); *Tose v. First Pennsylvania Bank*, 648 F.2d 879, 897 (3rd Cir. 1981) (demand that borrower relinquish financial control to specific individual did not violate the Bank Act); *B.C. Recreational Indus. v. First Nat'l Bank of Boston*, 639 F.2d 828, 832 (1st Cir. 1981) (requirement that borrower hire financial advisor designated by bank did not violate the Bank Act).

-7-

(Standard Container & Paper Co.) to sell 51% of the company stock to a competitor (Arrow Paper & Chemical Co., Inc.), which was also a customer of the bank. The issue before the court was whether the demand by the bank that its borrower sell its stock to a third party constituted a "tying arrangement" under the Bank Act. The court held that the complaint adequately alleged a "tying arrangement" because the allegations were that the bank imposed a requirement that the business be sold as a condition of granting further credit.

Swerdloff is distinguishable from the instant case. In Swerdloff, the bank was attempting to use its leverage to force its borrower to comply with an unusual demand, which would directly benefit one of the bank's other customers. Specifically, the bank conditioned the granting of further credit upon the transfer of the borrower's stock to one of the bank's other customers. Here, the Plaintiff has alleged that FNB violated the anti-tying provisions of the Bank Act by: (1) demanding that Mrs. Parsons assign control of CDs to FNB; (2) demanding that Mrs. Parsons sue parsons 4E for the sum of the Parsons' loans; (3) threatening to foreclose on Mrs. Parsons' real property if she did not comply with these demands. The Plaintiffs, however, have not alleged that FNB conditioned the extension of future credit upon the Plaintiff complying with these alleged demands of the bank.

In addition, unlike this case, the bank's alleged demands in Swerdloff had the affect of benefitting another customer. Practically speaking, these demands were anti-competitive in nature. Presumably, the bank was attempting to induce Arrow Paper to do additional business with the bank by making demands on Standard Container that would benefit Arrow Paper. Here, there is no indication that FNB's alleged demand would have the affect of benefitting any of its

-8-

other customers.  Moreover, there is no evidence that the bank would benefit in any way other than by getting additional protection for its investments with the Plaintiffs (*i.e.*, its existing loans with the Plaintiffs). This is not an alleged tying arrangement.

The allegations contained in the Plaintiffs' Amended Complaint fail to state a claim under Section 1972.  Rather, these allegations merely demonstrate that the demands of the bank were attempts to protect its existing investments with the Plaintiffs.  As correctly noted by FNB, courts have repeatedly held that taking measures to protect a bank's investment is within traditional banking practices and is not the kind of anti-competitive practice that gives rise to a cause of action under Section 1972.  In fact, courts have upheld a wide range of conditions placed upon debtors in efforts to protect the investment of the creditor-bank.  *Alpine Elec. Co. v. Union Bank*, 979 F.2d 133 (8th Cir. 1992) (finding that act of bank in using money in depositor's checking account to reduce debt of related corporation not actionable); *Bieber v. State Bank of Terry,* 928 F.2d 328 (9th Cir. 1991) (bank required officers of corporation to personally guaranty loan of corporation); *Palermo v. First Nat'l Bank & Trust Co.,* 894 F.2d 363 (10th Cir. 1990) (required officers to personally guaranty loan of corporation); *Davis v. First Nat'l Bank of Westville*, 868 F.2d 206 (7th Cir. 1989) (bank required debtor to provide a business liquidation service); *Parsons Steel,* 679 F.2d 242 (11th Cir. 1982) (required change in management); *Tose v. First Penn. Bank,* 648 F.2d 879 (3rd Cir.) (required change in CEO), *cert. denied,* 454 U.S. (1981). In short, it is not an unusual banking practice for a bank to request additional security, even when a loan is current.  Banks constantly re-examine loan portfolios and re-evaluate the risks and security needs of their loans.

The Plaintiffs also have no claim under the Section 1972 because FNB's actions were not anti-competitive. As noted above, the Plaintiffs' Amended Complaint does not allege that the FNB's actions lessened competition in any way or increased the bank's economic power. Additionally, the Plaintiffs' Amended Complaint does not allege that FNB engaged in any anti-competitive act. In order to state a valid claim under the Section 1972, the Plaintiffs not only must allege that FNB engaged in an unusual banking practice, but also must allege that the unusual banking practice was an anti-competitive tying arrangement benefitting the bank. *Parsons Steel*, 679 F.2d at 245. For such an anti-competitive tying arrangement to exist, the Plaintiffs must show the existence of anti-competitive practices which required them to provide another service or product in order to obtain the product or service from the bank that they desired. *Id.* The Plaintiffs have failed to allege any such conduct.

### B.       State Law Claim for Breach of Fiduciary Duty

The Court must also determine whether a jurisdictional basis exists to support the state law claim for breach of fiduciary duty. This inquiry is twofold. First, the Court must decide whether it has the power to hear the state law claim. Second, if the Court does have the power to hear the state claim, it must decide whether, in its discretion, it will retain jurisdiction over the state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966). The question of whether subject matter jurisdiction exists is measured as of the time the Complaint was filed. *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754 (6th Cir. 2000). When the Plaintiffs filed their Original Complaint, they had asserted a federal question under 28 U.S.C. § 1331. Therefore, the Court could properly exercise supplemental jurisdiction over the state law claim.

-10-

*See* 28 U.S.C. § 1367(a) (1994); *see also Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1567 (11th Cir. 1994).  Although the dismissal of the underlying Section 1972 claim does not deprive this Court of supplemental jurisdiction over the remaining state law claim, the Court has the discretion to decline to exercise supplemental jurisdiction over a non-diverse state law claim where the Court has dismissed all claims over which it had original jurisdiction.  *See Landefeld v. Marion General Hosp.,* Inc., 994 F.2d 1178, 1182 (6th Cir. 1993).

The Sixth Circuit has generally held that "if federal claims are dismissed before trial . . . the state claims should be dismissed as well.  *Id.* (citing *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Where Section 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise or to not exercise supplemental jurisdiction.  *Id.*  Under the circumstances presented, the undersigned believes that the state law claim remaining in this action would be best resolved by the state court.  This is especially true where the Court has dismissed the only claim over which it had independent subject matter jurisdiction early in the proceedings.  Judicial economy, fairness, and convenience dictate having the state law claim for breach of fiduciary duty decided by the state court.

## IV.    CONCLUSION

As outlined above, the Plaintiffs have failed to state a claim under the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972.  Therefore, the Court will dismiss this claim with prejudice.  Although the Court has the power to exercise jurisdiction over

the remaining state law claim for breach of fiduciary duty, this claim would be better resolved by the state court.  Accordingly, it is hereby

**ORDERED** as follows:

1.      FNB's motion to dismiss [Record No. 12] is **GRANTED**;

2.      The Plaintiffs' claims brought pursuant to the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972, are **DISMISSED**, with prejudice;

3.      The Plaintiffs' state law claim for breach of fiduciary duty is **DISMISSED**, without prejudice.

4.      Having resolved all claims contained in the Amended Complaint, this action is **DISMISSED** and **STRICKEN** from the Court's active docket.

This 18th day of July, 2006.



Signed By:

*__Danny C. Reeves__* DCR

**United States District Judge**

-12-